TILTON *v.* TILTON.

The owner of the reversion, in land authorized to be sold by the decree of a judge of probate, has such an interest in the subject-matter of the decree as will authorize him to appeal therefrom.

If evidence be received, which is at the time incompetent or inadmissible, but it is subsequently rendered competent by the introduction of other testimony, the difficulty is obviated.

The judge of probate has no power to authorize the sale of real estate to pay demands against an estate, until it be shown that the personal property is insufficient for that purpose.

If demands against an estate have been fairly adjusted, by mutual agreement of the parties interested, the judge of probate should not decree the sale of real estate to pay them, although, in ignorance of such adjustment, he may have subsequently recognized their validity as existing demands by his own decree.

An executor, who has permitted land, a life estate in which is charged by the will with the payment of the expenses of administration, to pass into the possession of the devisee for life, and suffered him to enjoy the rents and profits thereof for more than twenty years, is justly chargeable with those rents and profits to the amount of those expenses; or, at least, is estopped as against the owner of the reversion, to deny that those expenses have been paid by the devisee, or from the rents and profits of the land.

APPEALS from decrees of the judge of probate for this county, authorizing the appellee to sell the real estate of the testators, Rachel Tilton and Jemima Tilton, respectively, to pay the expenses of administering their several estates, as heretofore allowed to him by said judge. The accounts were allowed May 18, 1852, and the decrees

granting license to sell real estate were made October 21, 1856. The expenses of administration, on the estate of Rachel Tilton, were $34.03; on that of Jemima Tilton, $17.90. In each case, $5 were included for fencing bury-ing-ground. The expense of administering Jemima's estate, prior to the proceedings for settling the account, was only $5.50, and that of Rachel only $10; being substantially the expenses of proving the will in each case only. The residue of each account, aside from the charge for fencing burying-ground, was made up of the expenses of settling the account itself.

The auditor appointed to state the facts and report the papers, found, substantially, together with some other matters not deemed material, that each of the testators, by her will, executed November 4, 1831, gave to her nephew, Jacob Tilton, and his wife Sally, for their lives, and to the survivor for life, all her real and personal estate, except her wearing apparel, which was given to the ap-pellee, a brother of said Jacob, whom she appointed her executor, said property, at the death of said Jacob and Sally, to be equally divided between said Jacob's three sons, their heirs and assigns, said Jacob paying all her debts, the charges of her funeral, and the expenses of set-tling her estate; that the appellant, one of the three sons of said Jacob, to whom the reversion of each of the tes-tator's estates was devised, had purchased the interest of his two brothers, and was now the sole owner of the rever-sion of both estates; that said Sally Tilton died in the spring of 1852, and the property belonging to both estates had since been occupied by said Jacob; that said Rachel died prior to January 14, 1837, when her will was proved, and said Jemima prior to February 15, 1842, when her will was proved; that said Jacob Tilton, with his wife, by the assent of the appellee as executor, entered upon the land of each testator immediately upon her death, and had ever since occupied the same; that said Jacob paid

Tilton *v.* Tilton.

all the debts and funeral charges of each testator, but had never been called upon to pay the expenses of administration; that in 1849, at a settlement between the appellant and appellee, in relation to real estate which said Jacob had contracted to purchase of the appellee, it was agreed between the appellee and appellant, whom said Jacob had requested to settle the expenses of administration on said estates for him, that the settlement then made for said land " settled and squared up said administration expenses;" and that upon the hearing before him, the auditor permitted the appellant to testify, against the objection of the appellee, but that the appellee himself afterward testified.

*Pike & Barnard*, for the appellant.

*E. A. Hibbard*, for the appellee.

FOWLER, J.  The interest of the appellant in the subject-matter of the decree, authorizing the sale of land owned by him subject to the life estate of his father, is too evident to require discussion.   Rev. Stat., ch. 170, sec. 1; Comp. Laws 429.

The preliminary question as to the admissibility of the testimony of the appellant, it is unnecessary to consider, since the objection must be regarded as having been waived by the appellee, when he offered himself and was received as a witness, upon the general principle, that where testimony is incompetent or inadmissible when received, if, by the introduction of subsequent testimony, it is made competent, the objection is removed.

Nor, in the view which we have taken of the matter, has it been deemed material to consider or decide the question raised and discussed by counsel, as to the conclusiveness of the decree of the probate court, allowing the appellee's accounts of the expenses of administering the estates of the testators.

Tilton *v.* Tilton.

The only question distinctly and necessarily raised by the appeal is, whether, under all the circumstances of the case as found by the auditor, the judge of probate, in the exercise of a sound judicial discretion, was right in decreeing a sale of the real estate of the testators, to pay the expenses of administering their respective estates, as allowed by him; and we think it entirely clear that he was not, for several reasons:

1. By the statutes of this State, the judge of probate is not authorized to grant license to sell the real estate of persons deceased, to pay the just demands by law chargeable against their estates, unless the personal property shall be insufficient for that purpose; and it is the duty of the executor or administrator to show such insufficiency affirmatively, before such license can properly be granted. It does not appear by the auditor's report, nor by any of the papers in the case, that the personal estate of the testators, or either of them, was insufficient to pay the expenses of administration. Rev. Stat., ch. 164, sec. 1; Comp. Laws 417.

2. But, if this insufficiency had appeared, as perhaps it might upon a recommitment of the auditor's reports, another valid objection to the granting of any license to sell land in these cases, to pay the expenses of administration, would be, that, as found by the auditor, those expenses were "settled and squared up," by the mutual agreement of the present parties in 1849. There is nothing to show that this agreement was not a valid and binding one, and no suggestion that it was not fairly and understandingly made upon due and full consideration. It would not, we think, be a sound exercise of judicial discretion for a judge of probate to grant license to sell real estate to pay the expenses of administration which the party claiming them had once fairly and upon good consideration agreed to regard as settled and paid, even if, by concealing that fact, he had subsequently obtained

their allowance by a decree of the probate court itself. It is manifestly the policy of the law to encourage, rather than to disturb amicable family settlements and arrangements. *Barlow & al.* v. *Ocean Insurance Company*, 4 Met. 276.

3. But, if both these considerations were laid aside, there are other insuperable objections to the granting of a license in the present cases. By their wills, both the testators devised all their real and personal estate, except their wearing apparel, to Jacob Tilton, and his wife Sally, for their joint lives, and to the survivor for life, with remainder to three of their children, the said Jacob paying all their debts, funeral charges, and expenses of administration. The language of the devise in each case is, "the said Jacob paying all my just debts, and charges of my funeral, and all charges of settling my estate." Now, whether these words are to be construed as making the payment of these charges a condition precedent to the vesting of the life estate in the land in Jacob Tilton and his wife, as the authorities, looking only to the language employed, would seem to require; 1 Coke's Inst. 236, *b ;* 6 Cru. Dig. 428; *Crickmere* v. *Peterson,* Cro. Eliz. 146; *Large* v. *Cheshire,* 1 Ventris 147°; *Acherly* v. *Vernon,* Willes 153; *Hotham* v. *East India Co.* 1 D. & E. 645 ; *Kingston* v. *Preston,* Doug. 690; or are to be taken as creating an estate upon condition subsequent, or a limitation, as the interests of the remainder-men and the tendency of modern decisions would incline us to construe them; 10 Coke 40, *b ;* Cro. Eliz. 719, 833; Cro. Jac. 592; 1 Ventris 203; 1 Mod. 86; it seems equally clear that no license should have been granted.

By their respective wills, the testators set apart an interest for the life of Jacob Tilton and his wife, and the life of the survivor of them, in their lands, for the payment of their debts, funeral charges, and administration expenses. If Jacob Tilton and wife took an estate for life

in the land upon the precedent condition that said Jacob should first pay the debts, funeral charges, and expenses of administration, it was the duty of the executor, as representing the estate, to prevent his entering upon the land until they had been paid, or their payment secured. If he permitted him to enter and receive the rents and profits, he would himself be properly chargeable with those rents and profits at least; and if they were sufficient to satisfy the charges upon the land, the executor would be properly chargeable for them as for waste.

The result is substantially the same, if the life estate in the land were made chargeable with the debts, funeral charges, and expenses of administration. When Jacob Tilton, upon the death of the testator Rachel, in 1836, and of Jemima, in 1841 or 1842, entered upon their lands as devisee under the wills, he became personally liable to pay the expenses of administration, and held the lands subject to their payment. The appellee assented to his entry, and to his occupation, from those dates respectively, to the present time. Whether or not those expenses were afterward, in any event, a charge upon the general estates of the testators, it is not now necessary to decide. If the appellee could have any claim upon the other funds of the estate for their payment, it could only be after the fund, set apart by the testators for the purpose, had been exhausted, and proved insufficient. When the appellee accepted the trust of executor, and gave bonds to administer the estates of the testators according to their wills, he bound himself to see that the debts, funeral charges, and expenses of administration were paid from the life estate in the property devised to Jacob Tilton and his wife, if it were sufficient for that purpose. He might have enforced the payment against Jacob Tilton personally, at any time after he entered upon the devise, or proceeded against the life estate in the land, by entry for breach of the condition, a bill in equity, or otherwise; but he could have no right to sell

the land itself until the fund set apart for the payment had been exhausted. If, therefore, the appellee permitted the devisee for life to receive rents and profits of the life estate to an amount sufficient to satisfy and pay the expenses of administration, he is equitably, as well as legally, chargeable therewith as for waste, and estopped to deny that they have been paid. He cannot take advantage of his own wrong in permitting the fund appropriated to their payment to be wasted, to come upon another fund to pay himself. *Gookin* v. *True,* 3 N. H. 288; *Piper* v. *Piper,* 2 N. H. 439; 1 Chitty's Pl. 91; *Bucher* v. *Bucher,* 7 Johns. 99; *Orders* v. *Orders,* 10 Johns. 30; *Ewer* v. *Jones,* 2 Salk. 415; S. C. 2 Ld. Raym. 936; 6 Mod. 26, Holt 419, 2 Shower 36, 37; *Pickering* v. *Pickering,* 6 N. H. 120; S. C. 15 N. H. 281; *Judge of Probate* v. *Kimball,* 12 N. H. 165, and cases cited page 170; *Gardner* v. *Gardner,* 3 Mason 178, where the subject of charges upon land is fully discussed by the court and eminent counsel; *Labache's Case,* 6 Watts 167; *Nash* v. *Clarke,* 4 Dana 69; *Cox* v. *Ingleston,* 30 Vt. (1 Shaw) 258.

We think, therefore, that aside from the agreed settlement found by the auditor, the appellee is estopped as against the appellants, who own the whole reversionary interest, to deny that the expenses of administration have been paid. He has permitted the tenant for life to occupy, without objection, the land of one testator for more than twenty-three years, and that of the other for nineteen years, when it was his duty to collect of him those expenses, or to enforce their payment against the fund in his possession, by making them out of the rents and profits, or otherwise; and, upon every principle of equity and fair dealing, he should not now be heard to say that he has for so long a period neglected his duty. Having allowed a fund set apart for their payment to lie within his power and subject to his control for more than twenty years, he may rightfully be precluded from averring that they have not

been paid from it, or by the tenant for life, at least as against the reversioner. If an executor is properly chargeable with goods belonging to the estate which he might have received but did not, and with a claim which he has permitted to become worthless or outlawed in his hands, without an effort to collect it, while the debtor is solvent and responsible, much more should he be estopped to claim a debt as due to himself after the lapse of more than twenty years, during the whole of which he has had within his reach a fund set apart for its payment, which it was his duty thus to appropriate.

There are other considerations to which we might advert, why the land of the appellant ought not to be sold to pay the expenses of administration in these cases; but those already specified seem quite sufficient. The decrees granting license to sell real estate, in both cases, must be reversed, with costs of the proceedings here against the appellee personally in each case.

*Decrees reversed, with costs.*